UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELENA JOYCE,

    Plaintiff,

v.

FANNIE MAE, BAC HOME LOANS
SERVICING, L.P., f/k/a COUNTRYWIDE
HOME LOANS, and TROTT & TROTT, P.C,

    Defendants.
                                           /

CASE NO. 2:12-cv-10577
JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**
**(docket #6 and #8)**

I.    RECOMMENDATION: The Court should conclude that it lacks jurisdiction over plaintiff's complaint pursuant to the *Rooker-Feldman* doctrine, and accordingly should remand the matter to state court pursuant to 28 U.S.C. § 1447(c). If the Court accepts this recommendation, it should deny as moot defendants' motions to dismiss.

II.    REPORT:

A.    *Procedural Background*

Plaintiff Angelena Joyce, proceeding *pro se*, commenced this action in Wayne County Circuit Court on January 19, 2012, against defendants Federal National Mortgage Association ("Fannie Mae"), and Bank of America, N.A. ("BANA"), successor to BAC Home Loans Servicing, L.P., formerly known as Countrywide Home Loans, as well as the law firm of Trott & Trott, P.C. Plaintiff challenges a foreclosure by advertisement and subsequent foreclosure sale relating to property owned by her and secured by a mortgage. Defendants removed the action to this Court on February 9, 2012, pursuant to 28 U.S.C. § 1446(b), based on the diverse citizenship of the parties,

28 U.S.C. § 1332. Plaintiff alleges that she holds all right and title to the property, and that the foreclosure was invalid because it failed to comply with Michigan law.

The basic facts are not in dispute. On January 3, 2007, plaintiff executed a note in the amount of $108,000.00 to America's Wholesale Lender (AWL). Plaintiff also executed a mortgage on her property securing the note in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as the nominee for AWL and AWL's successors and assigns. The mortgage was recorded on January 10, 2007. A second note in the amount of $19,000.00 and related mortgage were executed and recorded on the same dates. MERS assigned the mortgage to BANA, which assignment was recorded on March 31, 2010. *See* Def.s' Mot. to Dismiss, Exs. A-C. On April 26, 2010, after plaintiff defaulted by failing to pay the amount due, defendant Trott & Trott sent a letter to plaintiff on behalf of BANA informing plaintiff of the default, BANA's decision to accelerate the loan, and BANA's intent to foreclose on the mortgage. *See id.*, Ex. D. On that same date, BANA sent plaintiff a notice through Trott & Trott of plaintiff's rights pursuant to MICH. COMP. LAWS § 600.3205a. *See id.*, Ex. E. The parties subsequently failed to work out a modification of the loan. *See id.*, Ex. F. BANA published notice of the foreclosure in the Detroit Legal News, and posted a notice of foreclosure at the property. *See id.*, Ex. G. BANA purchased the property at a foreclosure sale held on April 6, 2011, and subsequently transferred its interest in the property to Fannie Mae by quit claim deed recorded April 28, 2011. *See id.*, Exs. H-I.

Fannie Mae filed an action to evict plaintiff from the property in the 36th District Court on October 24, 2011. Plaintiff initially filed counterclaims, but subsequently voluntarily dismissed those counterclaims. On January 19, 2012, the state district court entered an order of possession in favor of Fannie Mae. *See id.*, Ex. J. On the same date, plaintiff filed this action in the Wayne

County Circuit Court, which was subsequently removed to this Court by defendants.

The matter is currently before the Court on the defendants' motions to dismiss. On February 16, 2012, defendants Fannie Mae and BANA filed a motion to dismiss, arguing that plaintiff's complaint should be dismissed because: (1) plaintiff lacks standing because she did not redeem within the statutory redemption period; (2) the complaint is barred by *res judicata* and collateral estoppel; (3) defendants complied with Michigan's foreclosure statutes; (4) plaintiff's quiet title claim fails to state a claim upon which relief may be granted; and (5) defendants were never properly served with the complaint. Defendant Trott & Trott filed its own motion to dismiss on February 20, 2012, adopting the other defendants' arguments. On February 23, 2012, plaintiff filed an "Objections to Removal to Federal Court." Plaintiff argues that this court lacks jurisdiction under § 1332, and thus removal was improper under § 1446, because Trott & Trott is not a diverse plaintiff. Fannie Mae and BANA filed a response to plaintiff's objection on March 12, 2012, arguing that because there is no plausible claim against Trott & Trott, it was fraudulently joined as a defendant, and such a fraudulent joinder does not defeat diversity jurisdiction. On March 20, 2012, plaintiff filed a response to defendants' motions to dismiss, again asserting her jurisdictional argument but not addressing the substance of defendants' motions to dismiss. Fannie Mae and BANA filed a reply in support of their motion on April 6, 2012. For the reasons that follow, the Court should conclude that it has jurisdiction over plaintiff's action, but that the action should be dismissed.

B.  *Jurisdiction and Removal*

  1.  *Removal Based on Diversity Jurisdiction*

Under the removal statute, "any civil action brought in a State court of which the district

courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendants removed this action asserting that the Court had original jurisdiction based on the diverse citizenship of the parties under 28 U.S.C. § 1332, which provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The diversity jurisdiction statute requires complete diversity; it "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Here, there is no dispute that plaintiff is a resident of Michigan. There is likewise no dispute that her citizenship is diverse from that of defendants BANA and Fannie Mae. BANA, a national banking association, is a citizen of "the State designated in its articles of association as its main office," *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006), in this case North Carolina. By statute, Fannie Mae is deemed a citizen of the District of Columbia. *See* 12 U.S.C. § 1717(a)(2)(B). *See generally*, *Hargrow v. Wells Fargo Bank, N.A.*, No. 11-1806, 2012 WL 2552805, at *2 (6th Cir. July 3, 2012) (discussing *Wachovia* and § 1717(a)(2)(B)). Thus, as between plaintiff and defendants Fannie Mae and BANA, there exists complete diversity of citizenship. Further, because the relief requested by the plaintiff is to void the sale of property valued at over $75,000,[1] the amount in controversy requirement is satisfied. *See Hargrow*, 2012 WL 2552805, at *2.

The wrinkle is presented by the presence of Trott & Trott as a defendant. As defendants concede, Trott & Trott is a resident of Michigan for purposes of § 1332, and thus is not diverse with

---

[1] At the foreclosure sale, the property was sold for $138,745.51. *See* Def.s' Mot., Ex. H.

respect to plaintiff. Defendants contend, however that Trott & Trott's residence is immaterial for jurisdictional purposes, because it has been fraudulently joined as a defendant. The Court should agree. As the Sixth Circuit has recognized, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *See Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Under this doctrine, joinder is fraudulent "if the removing party . . . presents sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id*. The question is whether "there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants." *Id*.

      Here, it is clear that plaintiff could not establish a cause of action against Trott & Trott under state law. Trott & Trott's sole role in this action was as counsel for BANA in the foreclosure proceedings. Plaintiff's complaint contains no allegations specifically directed at Trott & Trott, and all of her allegations relate to the foreclosure and sale of her property. In these circumstances, there is no colorable basis for predicting that plaintiff could recover against Trott & Trott, and its citizenship is therefore disregarded for purposes of the complete diversity rule. *See Faris v. BAC Home Loans Serv., LP*, No. 11-CV-12007, 2012 WL 628592, at *2 (E.D. Mich. Feb. 27, 2012) (Steeh, J.); *Conlin v. Mortgage Electronic Registration Sys., Inc.*, No. 11-15352, 2011 WL 6440705, at *1 (E.D. Mich. Dec. 16, 2011) (O'Meara, J.); *Estate of Malloy v. PNC Bank*, No. 11-12922, 2011 WL 4485088, at *1 (E.D. Mich. Sept. 27, 2011) (Edmunds, J.).

      Plaintiff contends that she has a viable claim against Trott & Trott under the Fair Debt Collection Practices Act (FDCPA) because they are "debt collectors" under the Act, *see* 15 U.S.C. § 1692a. Defendants contend that this argument is without merit, and is not properly before the Court because plaintiff did not assert a claim under the FDCPA against Trott & Trott, or any other

defendant, in her complaint. For jurisdictional purposes, defendants' arguments are irrelevant. If plaintiff has a viable and properly brought claim against Trott & Trott under the FDCPA, then the complaint raises a federal question over which the Court has original jurisdiction under 28 U.S.C. § 1331 without regard to the citizenship of the parties. In other words, either there is no colorable claim against Trott & Trott and thus the Court has diversity jurisdiction, or the only colorable claim is a federal one, which would provide this Court with federal question jurisdiction under § 1331 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In either event, this Court has jurisdiction, and should thus deny plaintiff's request to remand.

  2. *Standing*

A separate jurisdiction question is implicated by defendants' standing argument. If a federal court finds, in a removed action, that a party lacks jurisdictional–*i.e.*, constitutional–standing, the matter must be remanded to the state court. *See Coyne*, 183 F.3d at 496; *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Resources*, 876 F.2d 1051, 1053-54 (1st Cir. 1989). Under Michigan law, a property owner in default has six months following a foreclosure sale in which to redeem the property by paying the amount owing, and once this period expires "all of plaintiff's rights in and title to the property are extinguished." *Overton v. Mortgage Electronic Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009). From this rule, a number of judges of this Court and the Western District have held that once the redemption period expires, a plaintiff lacks standing to challenge a foreclosure sale. *See* Def.s' Br., at 6 n.3 (citing cases). Other judges have rejected this interpretation of *Overton* as implicating standing. *See Moss v. Wells Fargo Bank, N.A.*, No. 11-13429, 2012 WL 1050069, at *3-*4 (quoting with approval *Langley v. Chase Home Finance LLC*, No. 10-604, 2011 WL 1130926, at *2 n.2

(W.D. Mich. Mar. 28, 2011)).

As the Supreme Court has explained, "[t]he question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The constitutional requirement of standing is premised on the Constitution's limitation on federal courts to decide only actual "cases" or "controversies," and requires that a plaintiff "demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also*, *Friends of Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 180-81 (2000). Prudential standing refers to "a set of prudential principles that bear on the question of standing," *Bennett*, 520 U.S. at 162 (internal quotation omitted), but which are not required by the Constitution. To satisfy prudential standing, a plaintiff must generally show that she is seeking to enforce her own rights, rather than the rights of others; that hers is a particularized grievance as opposed to a generalized grievance; and third, in a statutory or constitutional case, that she falls within the zone of interests protected by the statute or constitutional provision at issue. *See Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011). Importantly, unlike the constitutional requirements of standing, the prudential limitations on standing are not jurisdictional. *See Independent Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1065 n.17 (9th Cir. 2008); *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008).

Regardless of how *Overton* is properly characterized, there can be no doubt that plaintiff has alleged the three constitutional (and hence, jurisdictional) requirements of standing. She alleges an

injury in fact (the foreclosure of her home), traceable to the actions of defendants (through their institution of foreclosure proceedings), and which could be redressed by a favorable decision (through recission or monetary damages).

3. *Rooker-Feldman Doctrine*

Despite the foregoing, the Court should conclude that it must remand the case to the state court because it lacks jurisdiction over plaintiff's claims under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is based on the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983). The doctrine "holds that lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings or to adjudicate claims 'inextricably intertwined' with issues decided in state court proceedings." *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002); *see also*, *Hutcherson v. Lauderdale County, Tenn.*, 326 F.3d 747, 755 (6th Cir. 2003). The "doctrine rests upon the principle that as courts of original jurisdiction, federal courts are without authority to sit as an appellate tribunal of the state judicial process." *Fayyumi v. City of Hickory Hills*, 18 F. Supp. 2d 909, 913 (N.D. Ill. 1998) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring)). As the Supreme Court has recently explained, "[t]he *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Although the federal courts had expansively applied the *Rooker-Feldman* doctrine, in *Exxon Mobil* the Court clarified that the doctrine "is a narrow doctrine, confined to 'cases brought by state-court losers complaining of

8

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 464 (quoting *Exxon Mobil*, 544 U.S. at 284). Because the *Rooker-Feldman* doctrine is jurisdictional, it not only can, but must, be raised by the Court *sua sponte*. *See Burr & Forman v. Blair*, 470 F.3d 1019, 1035 n. 38 (11th Cir. 2006) ("[F]ederal courts are duty bound to consider their subject matter jurisdiction sua sponte."); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) ("[F]ederal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction *sua sponte* if not raised by the parties.")

As explicated in *Exxon Mobil*, the *Rooker-Feldman* doctrine applies "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). Thus, "[i]n determining the applicability of the *Rooker-Feldman* doctrine, federal courts cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint, but instead must pay close attention to the *relief* sought by the federal-court plaintiff." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (internal quotation omitted). In short, "[if] the source of the injury is that state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Importantly, the doctrine applies only to attempts to relitigate state court judgments entered before the federal suit was filed; the doctrine does not abrogate concurrent jurisdiction in federal and state courts, nor is it analogous to a preclusion doctrine. *See Exxon Mobil*, 544 U.S. at 292 ("When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court."); *id.* at

293 ("Nor does [28 U.S.C.] § 1257 [the source of the *Rooker-Feldman* doctrine] stop a district court from exercising subject matter jurisdiction simply because a party attempts to relitigate a matter previously litigated in state court.").

Here, plaintiff's complaint alleges that the foreclosure and sale on her home were invalid, and in addition to damages she seeks an order quieting title in her favor and ending defendants' possession of the property. In the state court eviction action, however, the state court necessarily determined that the foreclosure was proper, and more importantly that Fannie Mae was entitled to title and possession of the property. Granting plaintiff the relief she seeks would require undoing that state court eviction order. In other words, plaintiff has "repaired to federal court to undo the [Michigan] judgment," *Exxon Mobil*, 544 U.S. at 293, and "[e]ach of the myriad and vague claims set forth by the plaintiff[] rests on the premise that the state court entry of [judgment] was invalid." *Thompkins-El v. Wells Fargo Bank Minn.*, No. 05-74715, 2006 WL 2433438, at *3 (E.D. Mich. Aug. 22, 2006) (Battani, J.). As other judges of this Court have explained in similar circumstances:

> In this case, the Mortgage was foreclosed under Michigan law and a State district court reached a final judgment on the petition to evict plaintiff . . . from the Property. Therefore, the State Court necessarily concluded that (1) the foreclosure was proper and rendered [Fannie Mae] the owner of the Property; and (2) it was proper under Michigan law to evict the occupants from the Property, including plaintiff. The relief sought by plaintiff in this lawsuit is to turn back the foreclosure and possess the Property. In order to grant this relief, the Court would have to rule that the State Court did something incorrect in ruling on the petition to evict. This is precisely the type of situation barred under the *Rooker–Feldman* doctrine.

*Austin v. Countrywide Home Loans, Inc.*, No. 07-CV-15127, 2008 WL 3833269, at *5 (E.D. Mich. Aug. 13, 2008) (Steeh, J.); *see also*, *Givens v. Homecomings Fin.*, 278 Fed. Appx. 607, 609 (6th Cir. 2008); *Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 873-87 (E.D. Mich. 2010) (Rosen, J.); *Thompkins-El*, 2006 WL 2433438, at *3.

In a case filed initially in this Court, the correct course would be for the Court to dismiss the action for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Because this case was removed from state court, however, it is governed by § 1447, which provides in relevant part that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). As explained by Judge Rosen, "[t]he *Rooker-Feldman* doctrine is jurisdictional in nature, and the words of § 1447(c) are unambiguous." *Battah*, 746 F. Supp. 2d at 874. Thus, even if the Court were to agree with defendants that plaintiff's claims are without merit, "dismissal is . . . not within the discretion of this Court," and the Court "must remand" the claims. *Id.*; *see also*, *International Primate Protection League v. Administrators or Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (noting mandatory nature of § 1447(c)); *Coyne*, 183 F.3d at 496-97 (same, citing cases).

C.     *Conclusion*

In view of the foregoing, the Court should conclude that it lacks subject matter jurisdiction over plaintiff's complaint pursuant to the *Rooker-Feldman* doctrine. Accordingly, the Court should remand the matter to state court pursuant to 28 U.S.C. § 1447(c). If the Court accepts this recommendation, the Court should deny defendants' motions to dismiss as moot.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505

11

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE

Dated: 7/6/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 6, 2012.
>
>                         s/Eddrey Butts
>                         Case Manager